## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

SUSAN COMEAUX, individually and on
behalf of all others similarly situated,

             Plaintiff,                     CIVIL ACTION NO. 2:23-CV-295

    vs.

SOUTHWEST LOUISIANA HOSPITAL
ASSOCIATION d/b/a LAKE CHARLES
MEMORIAL HEALTH SYSTEM,

             Defendant.

### NOTICE OF REMOVAL

       Defendant Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System ("Defendant") files this Notice of Removal, in accordance with 28 U.S.C. §§ 1332, 1441, 1446 and 1453, to remove this action filed by Plaintiff Susan Comeaux ("Plaintiff") from the 14th Judicial District Court of Louisiana, Parish of Calcasieu, Case No. 2023-505-Div. E, to the United States District Court for the Western District of Louisiana, Lake Charles Division.  In support of removal, Defendant states as follows:

### NATURE OF THE REMOVED ACTION

       1.      On February 7, 2023, Plaintiff filed a Class Action Complaint ("Complaint") in the 14th Judicial District Court of Louisiana, Parish of Calcasieu, Case No. 2023-505-Div. G against Defendant (the "State Court Action").  A true and correct copy of the Complaint is appended hereto as **Exhibit A**.

       2.      This putative class action arises out of an October 2022 data security incident involving Defendant's computer network (the "Incident").  *See* Ex. A, ¶ 3; Defendant's Notice, *available at* https://www.lcmh.com/cybersecurity/ (last visited Mar. 2, 2023).

4860-4037-0772.1

3.      This action is the last filed of currently nine putative class actions pending against Defendant on behalf of a purported class of individuals whose personal information was allegedly subject to unauthorized access as a result of the Incident.  The other eight cases are, by filing date: (i) *Felicia Anderson v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2:23-cv-00019 (W.D. La. filed Jan. 5, 2023); (ii) *Annette Salinas, Melissa Douga, Russell Murray, Matthew Miller, and Richard O'Quain v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-0090-Div. D (Calcasieu Parish, La. filed Feb. 5, 2023); (iii) *Joseph Martin and M.M. (minor) v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-0142-Div. H (Calcasieu Parish, La. filed Jan. 10, 2023); (iv) *Chantel Manuel and Harriet Manuel v. Southwest Louisiana Health Care System, Inc. d/b/a Lake Charles Memorial Health System*, No. 2023-000173-Div. G (Calcasieu Parish, La. filed Jan. 11, 2023); (v) *Lisa Guillory v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-0174-Div. F (Calcasieu Parish, La. filed Jan. 11, 2023); (vi) *Laci L. Butler, Courtni Goodwin (minor), and Christopher Soileau v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2:23-cv-00048 (W.D. La. Jan. 12, 2023); (vii) *George Navarro v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-0218-Div. H (Calcasieu Parish, La. filed Jan. 13, 2023); and (viii) *Elando Tellis v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2:23-cv-00143-JDC-KK (W.D. La. filed Feb. 2, 2023).[1]

---

[1] Contemporaneous with this Notice of Removal, Defendant is filing notices of removal in the *Manuel*, *Navarro*, and *Guillory* actions.

4.      Similar to all of the other putative class actions, the Complaint here alleges that the action is brought based on Defendant's "failure to properly secure and safeguard [personally identifiable information/protected  health information] PII/PHI" of Plaintiff and other class members, including "patient names, addresses, dates of birth, medical record or patient identification numbers, health insurance information, payment information and/or limited clinical information regarding care received at LCMHS; and in some unspecified number of cases, Social Security numbers." (Ex. A ¶¶ 2, 34.)  Plaintiff further alleges the data was "compromised as result of Defendant's negligent data management."  (*Id.* ¶ 32.)  Plaintiff also contends "there are 269,752 individuals" affected by the Incident.  (*Id.* ¶ 4.)  Plaintiff brings the action "to address [Defendant's] inadequate safeguarding of their PII/PHI, and for failing to provide timely notice to Plaintiff and other Class Members that their information was unsecured and left open to the unauthorized access of any unknown third party."  (*Id.* ¶ 5.)

5.      Plaintiff seeks to certify a nationwide class of "[a]ll persons in the United States whose PII/PHI was compromised in the Data Breach as disclosed by LCMHS on or around December 23, 2022," as well as a subclass of "[a]ll persons in the State of Louisiana whose PII/PHI was compromised in the Data Breach as disclosed by LCMHS on or around December 23, 2022." (*Id.* ¶¶ 36-37.)  Plaintiff contends that the putative class is comprised of "approximately 269,752" individuals.  (*Id.* ¶ 40.)

6.      Plaintiff alleges that, as a result of Defendant's acts or omissions, she and the putative class have suffered "(i) a substantially increased risk of identity theft and medical theft . . . ; (ii) improper disclosure of their PII/PHI; (iii) breach of the confidentiality of their PII/PHI; (iv) deprivation of the value of their PII/PHI . . . ; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach . . . ; and (vii) actual or attempted fraud."  (*Id.* ¶¶ 55, 60;

*see also* ¶¶ 8, 16-34.)   Additionally, Plaintiff alleges she and the putative class have suffered

anxiety and fear.  (*Id.* ¶ 18.)

7.      Plaintiff asserts claims on behalf of herself and a putative class of approximately

269,752 individuals for negligence, breach of fiduciary duty, unjust enrichment, and breach of

implied contract and seeks actual damages, compensatory damages, statutory damages and

penalties, injunctive relief, and attorneys' fees.  (*Id.* ¶¶ 35, 40, Prayer for Relief.)

8.      In accordance with 28 U.S.C. § 1446(a), to the extent the accessible records are

complete and current, all process, pleadings, and orders that have been filed and served in the State

Court Action are attached to this Notice as Exhibits A-B.

## TIMELINESS OF REMOVAL

9.      Plaintiff served the Complaint and Summons on Defendant on February 23, 2023.

A true and correct copy of the notice of service is attached hereto as **Exhibit B**.[2]

10.     This removal is timely because Defendant filed this removal within 30 days of

Plaintiff's service of the Complaint.  *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed

within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 348 (1999) (time period for removal begins when defendant is served).

## PROPRIETY OF VENUE

11.     This Court is in the judicial district and division embracing the place where the state

court case was brought and is pending.  As such, this Court is the proper district court to which

this case should be removed.  *See* 28 U.S.C. §§ 1441(a), 1446(a).

## GROUNDS FOR REMOVAL

12.     This is a civil action over which the Court has original subject matter jurisdiction

---

[2] The service return has been filed in the State Court Action but is not yet available for download.

under 28 U.S.C. §§ 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

## CAFA SUBJECT MATTER JURISDICTION

13.    **Basis of Original Jurisdiction**.  This Court has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d).  Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, and any member of the putative class is a citizen of a different state than that of the defendant.  28 U.S.C. § 1332(d)(1)-(2)(A); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007).

14.    As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Defendant may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative nationwide class includes more than 100 members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs.  *See id.*

15.    **This Action Is Pled as a Class Action.**  CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'"  28 U.S.C. § 1332(d)(1).

16.    Plaintiff brings this action as a "class action" and seeks class certification under Louisiana law pursuant to La. Code Civ. Proc. Ann. art. 591.  (Ex. A ¶ 36.)  Because Louisiana's Rule is a "similar State statute . . . authorizing an action be brought by 1 or more representative as

a class action," the first CAFA element is satisfied.  28 U.S.C. § 1332(d)(1); *see also Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, 367 F. Supp. 3d 555, 561 (E.D. La. Mar. 14, 2019) ("Plaintiff filed his petition as a class action petition pursuant to Louisiana Code of Civil Procedure Article 591 et seq.  Such actions are class actions for purposes of CAFA.").

17.     **The Putative Class Includes At Least 100 Members.**  Plaintiff purports to bring this action on behalf of herself and all others similarly situated, including nationwide class of "[a]ll persons in the United States whose PII/PHI was compromised in the Data Breach as disclosed by LCMHS on or around December 23, 2022."  (*Id.* ¶¶ 36.)

18.     Plaintiff asserts that the putative Class is comprised of approximately 269,752 individuals.  (*Id.* ¶ 40.)  Additionally, Plaintiff asserts that the "Class Members may be notified of the pendency of this action by mail and/or electronic mail."  (*Id.*)

19.     Thus, as pled, the number of putative class members exceeds the statutorily-required minimum of 100 individuals.

20.     **"Minimal Diversity" of Citizenship Exists.**  Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."  *See also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014).

21.     As pled in the Complaint, Defendant is a citizen of Louisiana.  (Ex. A, ¶ 9.)

22.     As pled in the Complaint, Plaintiff is a citizen of Louisiana.  (*Id.* ¶¶ 6.)  But, with nearly 270,000 putative class members with addresses across the United States, there is minimal diversity with at least one plaintiff diverse from Defendant.  This is especially true with a hospital, where "the Defendant hospitals could have treated and billed persons travelling through the state, persons transported into the state, or persons who were once domiciled in the state but changed

their domicile prior to the Petition's filing."  *Stewert v. Ruston Louisiana Hospital Co., LLC*, No. 3:14-CV-00083-RGJ, 2014 WL 1246139, at *7 (W.D. La. Mar. 25, 2014), *aff'd,* No. CIV.A. 3:14-0083, 2014 WL 4678606 (W.D. La. Sept. 19, 2014).  As such, minimal diversity is met.

23.    __The Amount in Controversy Exceeds the CAFA Threshold.__[3]  CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).  The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement.  *See id.* § 1332(d)(6).

24.    The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.  *Dart*, 574 U.S. at 89.  Once the proponent of jurisdiction has set out the amount in controversy, "the case should be remanded only if [plaintiffs] can prove to a legal certainty that [their] recovery will fall below" the jurisdictional amount."  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 724 (5th Cir. 2002); *see also Dykes v. Lyft, Inc*., 551 F. Supp. 3d 618, 622 (M.D. La. 2021).

25.    In determining whether the amount-in-controversy requirement is satisfied, a defendant may follow "either of two tracks: (1) Adduce summary judgment evidence of the amount in controversy, or (2) demonstrate that, from the class plaintiff's pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met."  *Berniard v. Dow Chem. Co*., 481 F. App'x 859, 862 (5th Cir. 2010) (footnote omitted).  For example, a defendant can offer "testimonial evidence . . . published precedent showing that damages in the instant case and in

---

[3] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or are entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

similar cases would probably exceed [the amount-in-controversy]" and the complaint's injury allegations. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57-58 (5th Cir. 1993). "In addressing such issues about amounts in controversy, it is critical for courts to focus on the phrase 'in controversy' and to remember the difference between even highly unlikely results and truly impossible results, and to avoid prematurely trying the merits of the case in deciding jurisdiction." *Schutte v. Ciox Health, LLC*, 28 F.4ᵗʰ 850, 854 (7th Cir. 2022).

26.     The Complaint does not specify the amount of damages Plaintiff and putative class members seek in this action. But the pleaded allegations demonstrate that the putative class members' claims, in the aggregate, exceed the sum or value of $5 million, exclusive of interest and costs.

27.     According to the Complaint, approximately 269,752 individuals were affected by the Incident and comprise the putative class. (Ex. A ¶ 4.) The Complaint need only plausibly show an amount-in-controversy of more $18.53 per class member to meet the $5 million jurisdictional threshold. And the allegations in the Complaint plainly meet this threshold.

28.     As stated above, Plaintiff brings this suit for negligence, breach of fiduciary duty, unjust enrichment, and breach of implied contract. (*Id.* ¶¶ 47-75.) They seek, among other relief (including statutory damages and penalties), compensatory damages for actual identity theft, lost opportunity costs, compromise of PII/PHI, out-of-pocket expenses, costs associated with mitigation efforts, continued risk to their PII/PHI, and present and continuing costs in terms of time, effort, and money to "maintain these heightened measures for years, and possibly their entire lives." (*See id*. ¶ 30.) They seek injunctive relief in the form of credit monitoring and business process changes to be made by Defendant. (*Id.,* Prayer for Relief.)

29.     Focusing only Plaintiff's claim for credit monitoring "for not less than seven years," the three main identity-protection agencies—Equifax,[4] LifeLock,[5] and Experian[6]—advertise monthly rates for credit-monitoring services ranging from $8.99 to $19.99 per person per month. (*See* Ex. A., Prayer for Relief.)  For example, LifeLock offers a product, titled Norton360 with LifeLock, that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $8.99 per month.  Similarly, both Equifax and Experian offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 per month.  Taking the least expensive product (at $8.99 per month), which costs $107.88 annually, the costs of providing one year of credit monitoring to at least 269,752 individuals alleged to be in the putative class would be $29,100,845.76, notwithstanding that Plaintiff alleges that the putative class "will be at risk for falling victim to cybercrimes for years to come."  (Ex. A ¶ 18.)

30.     Indeed, in data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements.  *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 WL 4051265, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn.

---

[4] *See* https:// https://www.equifax.com/personal/ (last visited Jan. 30, 2023).
[5] *See* https://lifelock.norton.com/products?inid=lifelock-lifelock-standard_subnav_products (last visited Jan. 30, 2023).
[6] *See* https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606 (last visited Jan. 30, 2023).

2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12-cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).  Thus, the Complaint's request for damages and injunctive relief for credit monitoring costs alone puts more than $5 million in controversy in this case.

31.    Further, Plaintiff seeks injunctive and declaratory relief requiring untold changes to Defendant's cybersecurity practices, such as "compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety," and requiring Defendant to conduct data mining or an additional investigation to determine "with specificity the type of PII/PHI compromised during the" Incident.  (Ex. A, Prayer for Relief.)  These purported costs must also be considered in determining the amount-in-controversy.  *See Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 847-48 (S.D. Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits *that would logically flow* from the granting of the declaratory relief sought by the claimants.  For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000.") (emphasis in original).

32.    Finally, Plaintiff also seeks an award of statutory damages and penalties "in an amount to be determined, as allowable by law."  (Ex. A., Prayer for Relief.)

33.    Based on the minimum compensatory damages for credit monitoring costs calculated above, potential additional statutory damages or penalties awarded to the class could also exceed the CAFA amount-in-controversy minimum.  And combined with Plaintiff's other damages, the CAFA amount-in-controversy threshold is met here.  *See, e.g., Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 632 (4th Cir. 2007) (holding that "[o]nce the proponent of jurisdiction

has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction") (quotation omitted); *see also, e.g., Thomas v. FIA Card Servs., Nat'l Assoc.*, No. 5:14-CV-79, 2014 WL 4954389, at *3 (N.D. W. Va. Oct. 2, 2014) (same; "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.") (quotation omitted); *Kates v. Chad Franklin Nat'l Auto Sales N. LLC*, No. 08–0384–CV–W–FJG, 2008 WL 3065009, at *2 n.5 (W.D. Mo. July 30, 2008) ("The Court can easily imagine how $900,000 in actual damages, combined with punitive damages and attorney's fees, could exceed the jurisdictional threshold" of CAFA.).

34.     Thus, because the case is pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Defendant has properly removed the State Court Action to this Court.

## EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY

35.     "The district court can decline jurisdiction under three provisions: (1) the home state exception, § 1332(d)(4)(B); (2) the local controversy exception, § 1332(d)(4)(A); and (3) the discretionary jurisdiction, § 1332(d)(3)." *Preston*, 485 F.3d at 797; *see* §§ 1332(d)(3)-(4).

36.     It is the "plaintiffs [that] have the burden to show the applicability of the §§ 1332(d)(3)-(5) exceptions when jurisdiction turns on their application." *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006).

37.     Under the local controversy or home state exceptions, a plaintiff has the burden of persuasion on whether two-thirds or more of the members of the proposed class and the primary defendants are citizens of the original filing state. *Robert J. Caluda, APLC v. City of New Orleans*, 403 F. Supp. 3d 522, 536, 541 (E.D. La. 2019); *see* 28 U.S.C. § 1332(d)(4)(A)-(B).  As noted above, with over 270,000 putative class members with addresses across the United States, there is

simply no way to know the citizenship of each class member without speaking directly to each of those nearly 270,000 individuals. This is especially true with a hospital, where "the Defendant hospitals could have treated and billed persons travelling through the state, persons transported into the state, or persons who were once domiciled in the state but changed their domicile prior to the Petition's filing*." Stewert,* 2014 WL 1246139, at *7. And citizenship for purposes of CAFA requires both residence and an intent to remain. *See Preston*, 485 F.3d at 798.

38.     Moreover, the local controversy and interests of justice exceptions do not apply because "during the 3-year period preceding the filing of [this] class action, [] other class action[s] ha[ve] been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . ." 28 U.S.C. § 1332(d)(4)(A)(ii). Before this action was filed, on January 7, 2023, a substantially similar putative class action was commenced against Defendant in the Western District of Louisiana, *Felicia Anderson v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2:23-cv-00019 (W.D. La. filed Jan. 5, 2023), asserting allegations and claims on behalf of a putative class of "[a]ll persons in the State of Louisiana whose PII was compromised in the Data Breach[,]" for negligence, negligence *per se*, breach of fiduciary duty, unjust enrichment, and breach of implied contract. (No. 2:23-cv-00019, ECF No. 1 ¶¶ 41, 71-105.)

39.     In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

### NOTICE

40.      As required by 28 U.S.C. § 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Court of Calcasieu Parish.

WHEREFORE, Defendant removes the State Court Action from the 14th Judicial District Court for the Parish of Calcasieu, to the United States District Court for the Western District of Louisiana.

Respectfully submitted this 3rd day of March, 2023.

*/s/ William B. Monk*
William B. Monk
Louisiana State Bar No. 09551
**Stockwell Sievert Law Firm**
Chase Bank Bldg.
127 W. Broad St., 4th Floor
Lake Charles, LA 70601
Telephone: 337-493-7232
Facsimile: 337-312-2919

Christopher A. Wiech
*(Pro Hac Vice Forthcoming)*
Georgia Bar No. 757333
Chelsea M. Lamb
*(Pro Hac Vice Forthcoming)*
Georgia Bar No. 524879
**Baker & Hostetler LLP**
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: 404.946.9814
Facsimile: 404.459.5734
cwiech@bakerlaw.com
clamb@bakerlaw.com

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2023, a true and correct copy of the foregoing document

was served via ECF on all counsel of record and via electronic mail as follows:

Barry A. Roach                              Michael R. Reese
Michael A. Schwartzberg                     **Reese LLP**
**The Roach Law Firm**                      100 West 93rd Street, 16th Floor
2971 Ryan Street                            New York, New York 10025
Lake Charles, Louisiana 70601               mreese@reesellp.com


                                            Charles D. Moore
                                            **Reese LLP**
                                            100 South 5th Street, Suite 1900
                                            Minneapolis, Minnesota 55402
                                            cmoore@reesellp.com


                                            */s/ William B. Monk*